**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| United States of America, | Case No. 2:22-mj-00608-BNW |
|---|---|
| Plaintiff, | |
| v. | **Order** |
| Adam Dymski, | |
| Defendant. | |

Adam Dymski was charged with disorderly conduct, in violation of 38 CFR § 1.128(b)(11) as a result of alleged events that took place at the VA Hospital in North Las Vegas, Nevada, on November 23, 2021. The citation states that Dymski was observed in front of the pharmacy "yelling/screaming." ECF No. 5. The citation goes on to state that Dymski was told he would be arrested for disorderly conduct if he did not stop disturbing other patients. *Id*. Lastly, according to the citation, despite the warning, Dymski started yelling/screaming again while waiving his hands in the air. *Id*.

This Court held a bench trial on September 28, 2022. This Court asked the parties to brief several issues in order for this Court to properly delineate the elements of the offense and construe the meaning of certain terms. The parties filed their respective briefs, which this Court has reviewed. ECF Nos. 11, 12.

**I.     Elements of 38 C.F.R. § 1.218(b)(11)**

Dymski was charged with violating 38 CFR § 1.128(b)(11), which is the penalty provision for 38 CFR § 1.128(a)(5)—the substantive offense. The substantive offense is worded in the disjunctive, and, as applied here, requires proof that Dymski's conduct created a "loud *or* unusual noise." 38 CFR § 1.128(a)(5). On the other hand, the penalty provision is worded conjunctively, and specifies the fine for "disorderly conduct which creates loud, boisterous, *and* unusual noise." 38 CFR § 1.128(b)(11).

In *United States v. Agront*, the Ninth Circuit makes clear that 38 C.F.R. § 1.218(b)(11) must be read in conjunction with 38 C.F.R. § 1.218(a)(5). *United States v. Agront*, 773 F.3d 192, 196 (9th Cir. 2014). But *Agront* discussed the need to read both subsections together in the context of a constitutional challenge—it never enumerated the elements of the offense. Thus, *Agront* does not answer the question before this Court: whether the elements of the offense should be read conjunctively or disjunctively.[1]

This Court need not decide this matter as it finds that, as explained more fully below, the Government has adduced evidence to show beyond a reasonable doubt that the more onerous interpretation of the regulation has been met. In other words, the Government has proven beyond a reasonable doubt that, as to this particular portion of the regulation, Dymski's conduct created a loud, boisterous, and unusual noise.

Turning to other aspects of the regulation, *Agront* makes clear that the regulation requires that the conduct in question be conduct that would tend to disturb the normal operation of the VA. *Id*. (internal quotations omitted). Lastly, *Agront* explains that conduct that "would tend to disturb the normal operation of the VA facility" must be the type of conduct that poses an "actual or imminent interference with that facility's operation." *Id*. at 197 n.5.

As to the meaning of "normal operation," there is no definition for this term in the regulation. As a result, this Court adopts its ordinary meaning. *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 874 (9th Cir.2007)(explaining that "in the absence of a statutory definition, a term should be accorded its ordinary meaning.") Thus, "normal operation" is the "regular of routine operation" of the facility.

Based on the factual allegations in the citation, this Court finds the Government proved beyond a reasonable doubt that (1) Dymski's conduct was such as to create a loud, boisterous, and unusual noise, (2) that would tend to disturb the normal operation of the VA in that it posed

---

[1] Dymski cites to *United States v. Renfro*, 702 F. App'x 799 (11th Cir. 2017), for the proposition that the conjunctive approach should be taken. But the court in Renfro made clear it "need not decide today the precise elements that the government had to prove to convict an individual of disorderly conduct under § 1.218." *Id*. at 806. And neither is *United States v. Williams*, 892 F.2d 1044 (6th Cir. 1990), instructive on this point.

an actual or imminent interference with the regular or routine operation of the facility , (3) the conduct occurred at a VA facility, and (4) Dymski acted knowingly[2].

Given this Court finds the Government has proven these elements beyond a reasonable doubt, there is no need for this Court to determine whether Dymski could be found guilty of conduct described in (a)(5) but not described with specificity in (b)(11) or whether he violated the regulation in any other manner.[3]

## II.     Relevant Findings of Fact

Sergeant Sims worked at the VA facility in question on November 23, 2021. He was the lead officer and K-9 handler. He heard Dymski yelling close to the pharmacy area and identified Dymski as the defendant in court and on the surveillance video. He was yelling "Fuck Joe Biden" and "This is a conspiracy."[4] Shortly after that, Sgt. Sims received a radio call that there was a disturbance in front of the pharmacy. Due to the disturbance call, other officers joined him in the area. When Sgt. Sims interacted with Dymksi, Dymski continued yelling at him stating similar things as those he heard Dymski utter before. Dymski was agitated. During this time, individuals who worked at the pharmacy were leaning out of their cubicle areas to see what was going on, three or four pharmacy techs stopped interacting with patients, and others came out of their work areas to see what was going on. Two veterans also approached Mr. Dysmki upset at his behavior. Officer Robinson was a police officer at the VA facility in question on November 23, 2021. On that day, he was dispatched to the pharmacy area of the facility. He observed Dymski yelling and screaming at Sgt. Sims and identified Dymski as the defendant in court. He was loud enough that people stopped doing what they were doing to watch. Dymski was saying "Fuck the VA."

This Court found both witnesses credible. This Court acknowledges that much of the testimony was not covered in their written report and that the exchange between Dysmski and the veterans was downplayed by Sgt. Sims.

---

[2] Violations of 38 C.F.R. § 1.218(a)(5) are crimes of general intent. *United States v. Szabo*, 760 F.3d 997, 1001 n.2 (9th Cir. 2014).

[3] Moreover, as explained in more detail below, this Court finds the Government has met its burden without the need to make any findings as to the officers involved in this case.

[4] This was corroborated by the screener Kristina Hill. Ms. Hill did not see him yelling but heard the yelling after she screened Dymski.

The surveillance video does not have sound. It does, nevertheless, show Dymski in a very agitated state throughout the time he was there. He can be seen pacing, upset, and at one time he can be observed clapping.

Dymski himself admitted to being frustrated. He was in a lot of pain and realized he'd have to wait for his medications and possibly have to contact his doctor first. He stated he only "got loud" at the pharmacist when he was told he'd have to contact his doctor.  While Dymski denied yelling or having said "Fuck Joe Biden," or "Fuck the VA" there are three other witnesses who corroborate the fact that Dymski did make those statements. Certainly, what was said is not as important as the manner in which it was said. And the fact that two other veterans approached Dymski also corroborates the notion that Dymski was being loud.

**III.    Conclusions of Law**

Dymski behavior was loud, boisterous, and unusual. He was screaming profanities, testimony which was corroborated by three different witnesses. A call was placed over the radio for officers to report near the pharmacy. The conduct was of such magnitude that two veterans (in two separate occasions) approached him.[5] Indeed, at the time the second veteran approached him (right before the arrest) an older black gentleman turned around in his chair to see what was going on.

His behavior posed an actual interference with the regular or routine operation of the facility. Sgt. Sims testified that individuals who worked at the pharmacy were leaning out of their cubicle areas to see what was going on, three or four pharmacy techs stopped interacting with patients, and others came out of their work areas to see what was going on. All three witnesses testified that these events took place at the VA in North Las Vegas, NV. Dymski acted knowingly. He was aware of what he was doing and had the general intent to engage in the conduct in question.[6]

//

//

---

[5] It is clear Dymski is not the only one who was causing a scene.
[6] Dymski's testimony makes this clear, including his own recollection of having yelled at the pharmacist.

**IV.    Conclusion**

This Court finds Adam Dymski GUILTY of the offense charged. Sentencing is scheduled for September 6, 2023 at 9:00 a.m. in Las Vegas Courtroom 3B.

DATED: August 2, 2023

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE